May it please the Court, my name is Mayor Fetter, and I represent Appellant Standard Insurance. I should mention at the outset I'd like to reserve three minutes of my time for rebuttal. Just watch the clock, Mr. Fetter. Thank you, Your Honor. Your Honor, Commissioner Morrison banned discretionary clauses in insurance policies in Montana to correct what he perceived as the injustice of deferential review of ERISA benefits claims for insurance policies that had discretionary clauses. I take it you're relying on his statement of policy, not there's no regulation that we are looking to unlike in Illinois, for example. We're relying on several things, Your Honor. I mean, there were quite a number of statements of the reasons for this by the Commissioner. There also were ---- But he's doing this on a case-by-case basis, as I understand it, unless you can elucidate. He is doing it on a case-by-case basis in the sense that there never was a formal regulation promulgated that actually provides for this, but it's not case-by-case in the sense that it is ---- it is applied in every case. Is he still the insurance commissioner? No, Your Honor. He is no longer the insurance commissioner, although our understanding ---- his term expired, but our understanding is that the policy remains in effect, policy of the office, as opposed to merely a personal policy. So the new commissioner is carried forward. Is that on the record, or are you just ---- No. I mean, my understanding is that that is a very recent development. Hear from Mr. Hunt on that. Yes, Your Honor. And I should add that the policy followed on proposed regulations that did state a rationale that identified the proposed rules as being aimed at ERISA plans and at the ---- in particular, the deferential review of ERISA plans with discretionary clauses. And as the district court judge in the Michigan Sixth Circuit case correctly recognized, the ban on discretionary clauses is really tantamount to something simply requiring de novo review in all Federal court ERISA benefits reviews. It has effect only as applied to ERISA plans, and for that matter, it has effect only on the conduct of the litigation in Federal court. It does not have any effect in any other way, either at a prior point or to anything but ERISA plans. Counsel, we've been notified by Mr. Hunt of the Ross case in the Sixth Circuit, which I gather in which you participated. How would you compare Ross, which as I understand it, and correct me if I'm wrong, is the only case so far from a court of appeals that has dealt with this particular policy of denying approval of discretionary clause insurance policies? How would you compare Ross and the considerations in that case with what we have here in Montana? Yes, Your Honor. I should mention that we also submitted a letter on the Ross case. We have it. Okay. The ---- there are two basic things that I would say. One is that at least according to the way the court in Ross read the effect of the Michigan rules, there's something at the end of the Ross opinion saying essentially that it would not necessarily require de novo review across the board in all ERISA cases. It would apply to interpretation of plan language, but not necessarily to application of the language to particular cases. Well, it said not to ---- does not follow that they will do so in reviewing the application of a settled term in the plan to a given benefit request. Yes, exactly, Your Honor. So I think that at least in that respect, I don't think there's any dispute here that the effect of eliminating discretionary clauses as applied to all ERISA plans in Montana, all insured ERISA plans in Montana, would be to require under Firestone to require de novo review for all benefit denials without a distinction based on whether you're talking about interpreting policy language or talking about applying the language to particular cases. So that's a potential quasi-factual distinction. I think more importantly, the analysis of the Ross court really is a question of one that focuses, first of all, primarily on the express preemption prong of ERISA rather than on the Section 502A preemption. And in addressing the 502A preemption, we don't think that the analysis withstands scrutiny. Essentially, the analysis there only goes so far as to say that because there is no discretionary clause, there is no discretionary clause, the ban on discretionary clauses doesn't create an alternative remedy or an additional remedy or a replacement remedy, therefore, it doesn't affect the remedial scheme within the meaning of Section 502 preemption, and so they needn't be concerned with it. And I think there's an additional comment about how it's viewed as responding to a conflict of interest when you have the same administrator interpreting the policy and signing benefits claims on the one hand, and also paying claims on the other, and the court cites the Supreme Court's Glenn case as recognizing the The problem there is that a few things, but with respect to Glenn in particular, Glenn cuts exactly the other way, because what Glenn represents is the Federal Court's attempt to deal with exactly that conflict of interest from the – within the policies of the ERISA statute, and in particular, the ERISA remedial scheme. And what Glenn says is the one thing we know Congress did not want is to have a rule that would amount to near universal de novo review. So – and what we have here is essentially Commissioner Morrison expressing the view through this practice or this ban of saying that the conflict of interest, whatever balance the Supreme Court has arrived at for dealing with that for Federal purposes, that is not acceptable, and we're saying the conflict of interest has to result in de novo review across the board. Now, did Rush Prudential, Supreme Court U.S., take away the entitlement to abuse of discretion, standard of review? No, Your Honor, and I think – That is what I'm trying to get to. What's the heart of the matter here? There's a lot of smoke around here. Where's the fire? Your Honor, it's a very good question, and I think the heart of the matter here is basically over – I don't think there's a lot of dispute that what this practice does is eliminate the ability of employers creating plans to provide for abuse of discretion review. And the heart of the matter is whether that availability of the deferential review is something that was a matter of indifference to Congress and to the ERISA scheme, or whether it's something that is actually a Federal policy and a congressional policy of having there. Because if it's a matter of indifference, then I suppose that taking away that option doesn't do anything to the Federal scheme. But I think that it's quite clear for several reasons that it is far from a matter of indifference. You have – Why do you think Congress excluded insurance from the ERISA? I think because insurance is a traditional area of State police power regulation. That's right. And it's covered by lots of Federal statutes. Yes. And in that manner, as a State problem. Exactly. So why can't the State pass a law that says you can't put in a heads-I-win, tails-you-lose clause in your insurance policy? Well, I think that the answer, again, is a couple of things. One is that there is a Federal policy on this that treats this as not at all being a case of heads-I-win, tails-you-lose. And Montana is essentially saying the Federal remedial scheme isn't good enough. The more fundamental answer is that the State can regulate insurance in whatever way it wants, except that what it cannot regulate is the remedial scheme and the conduct of the remedy in Federal court. And this is different from any other case that's been upheld as regulating insurance in that all of those cases dealt with rules that actually affected something before you got to Federal court. It affected whether or not the administrator should be paying the claim, whether you had an entitlement to relief. This is aimed at very significantly, and I don't think I can overstate the significance of how different the Federal court litigation is under a de novo. Well, we, I think, understand that because we're part of the Federal court system and we've reviewed these, so we know the difference. I'm having a little trouble understanding exactly your predicate about Congress. Are you suggesting that Congress, notwithstanding that it didn't address the standard of review in the legislation, nonetheless, there's a clear Congressional policy to allow, to prohibit States from imposing de novo review, such that the corollary of that would be that the insurance companies can mandate, because they control the policy, the insurance policies, they can always retain discretion and, therefore, retain to themselves the abusive discretion standard? Where else would a de novo review option come from? Well, in fairness, Your Honor, it actually is, at least in the Congressional scheme, the employer that's creating the plan that has the ability to determine whether something is going to be discretionary or not. And I think that there is very much of that. But ERISA is aimed at protecting the employer? ERISA is aimed, and in particular, the Supreme Court has said over and over, the remedial structure of ERISA is a very careful balancing between, on the one hand, making sure that benefits claims are dealt with fairly and efficiently, and, on the other hand, making sure that it advances the public policy in actually incentivizing employers to create these benefits plans. And the Court has recognized that one of the important aspects of that is the certainty and efficiency of the ERISA remedial scheme. Chief Justice Roberts ---- Okay. Because you're running out of time, I know you wanted to say it. I'm just trying to ---- The bottom line is that if the Montana Insurance Commissioner, who sees the public that in approving insurance plans, in his interest, presumably vis-a-vis employees, requires that it leave open de novo review, your suggestion is that that's contrary to ERISA and to congressional policy, which would leave it to the employer and the insurance company, who predictably would almost always go for abuse of discretion. That is exactly right, Your Honor. And I think that, in fact, it would make very little sense to imagine that this would be a matter of indifference to Congress as to whether employers would have that option, because the Supreme Court has said over and over again that the remedy scheme is very carefully selected, both as to what it provides and what it chooses not to provide, and that the balancing is expressly designed on one side of it to make sure that you're not deterring the creation of plans by making it too expensive, too cumbersome, et cetera. And so the availability, as Chief Justice Roberts said in his two concurrences, one joined by Justice Kennedy, is an important part of the balance, and it would be, in such a carefully calibrated scheme, I submit, be very hard to imagine that Congress would not care about such a significant change as whether or not employers have it available to them to do this. And ERISA does not leave open to an insurance commissioner the ability to regulate how ERISA cases proceed in Federal court. They can regulate the substance of insurance policies, but they may not regulate the way Federal courts review ERISA benefits denials. Thank you, counsel. Your time has expired. Mr. Hunt. May it please the Court, thank you. My name is Jim Hunt. I'm from Helena, Montana, on behalf of the insurance commissioner. And a couple of housekeeping matters. One is that the new commissioner is continuing with the case. Her name is Monica Lindeen, L-I-N-D-E-E-N. Would you mind sending a note to the Court confirming that so we can substitute her name? I would be happy to do that, Your Honor, and I apologize for not doing that sooner. The other thing is, just as a matter of housekeeping as well, and when I was preparing last night about midnight, I realized this, that the standard insurance company sued the insurance commissioner. I knew about this before midnight last night, but the standard insurance company sued the commissioner in state court in Montana. And the issue there was whether discretionary clauses are illegal under Montana law. And the district court, the trial court, ruled that they are, in fact, illegal under Montana law. And so that issue has been answered, I think, because the standard has chosen not to appeal that case to the Montana Supreme Court. So the issue before us today is whether or not the commissioner has the power to disapprove the discretionary clauses. If, in fact, this Court does really has the power, or in this case she does, then they are illegal under Montana law. Well, I want to be sure we have a real case or controversy here. Can you represent to the Court that the new commissioner will carry forward the policy of disapproving insurance policies that have the discretionary clause? Yes, Your Honor, and I'll get a notice to the Court of that effect if you want. But I can't expressly represent that. I've met with her, and she has continued on. She's still paying my bills, so I assume she is. So you'd have to do that anyway. It isn't much, but it's what it is. The standard argues that this is an issue about remedy, and it's not an issue about remedy. And I'm sure I'll get corrected on this if I'm wrong. The fact is, every case at which I looked with respect to ERISA that addressed the remedial part of ERISA dealt with a state remedy. Tort, contract, bad faith. If you look at the De'Vea case or Davila case, depending on how you want to pronounce it, all those cases looked at whether or not there was a state-specific remedy. If you have a discretionary clause or you don't have a discretionary clause, the process is the same. The parties are the same. The forum is the same, and the remedies are all the same. There are six remedies articulated under ERISA. They are the same with or without a discretionary clause. This is not a remedy case. In response to your question, Your Honor, whether Rush took away the right of discretionary clauses, I don't think it was ever there in the first place. Firestone said that they could have them, but the default standard is de novo. So I guess you could say it's a right. But in fact, what Rush said, and, you know, I've looked at all the cases that go along with, you know, when you look at Ross and they quote Rush and they quote Ward and all the various cases, the Ward case out of this one. The one quote that I haven't seen in any of the cases, but this is pretty close, I'm going to paraphrase a little bit. But what the court said in Rush is that Rush's arguments convinced this court, the U.S. Supreme Court, that further limits on insurance regulation preserved by ERISA are unlikely to deserve recognition. So in a sense, what the court is saying is that's it. I mean, they're going to look at them, but by saying that, what they're saying is that in Rush, the mandated benefit review process is acceptable and it does not affect the remedy. And the Rush court looked at that specifically. The Ward case out of this circuit in the U.S. Supreme Court looked at it a little more roundabout, but it in fact also came up with a notice prejudice rule, decided that it did not affect the remedy, ERISA remedy. So you have all these cases that say that the ERISA remedy is in fact not protected or allowed, I'm sorry, affected when you're talking about the standard of review, the mandated benefits in Rush, the notice prejudice rule in Ward. And you also have specifically the Ross case which decided that. And then you have the Glenn case, the most recent case, which says there's a conflict of interest and asks kind of in a rhetorical manner, not in a question but in a statement, why shouldn't a state be able to regulate an abusive discretion standard, regulate a standard of review if there is a conflict of interest? I'm sorry, the Ross case asked that question based on the Glenn case. Let me back up for a second. I got confused there. The Ross case states, Glenn found- Do you agree that Ross is the only case out there at a court of appeals level which specifically deals with the same issue that we have in this case? Specifically, yes. I think the Rush case comes very close. I think the Ward case comes, you know, versus Ward case comes very close. But I agree with you about that, yes. So therefore, we should just issue a one-line opinion affirmed on the basis of Ross? Can we do that? Well, you can do whatever you want, Your Honor. You understand my intellectual inquiry here. Well, Your Honor, let me answer that with a statement, because in preparing for my argument, I thought about standing up here and reading you the Ross case. But I figured you'd already read it, so that would be something that would be a waste of the Court's time. The answer to your question, if the Court follows the Ross decision, clearly, I think you have to decide that the insurance commissioner for the State of Montana is allowed to regulate insurance in disapproved discretionary clauses. You know, early on, so to answer your question, yes, you could do that. I think my guess is you're going to give an analysis. Well, no, no. What I'm trying to get at is I specifically raised the Ross case. First of all, you quite properly gave us a 20HA letter on it, and there's a response from your opposing counsel, and I specifically asked your opposing counsel to compare Ross to this case. So I need you to tell me why is he wrong and you're right. Well, with respect to the Ross case? Yes. Well, the Ross case deals with Kentucky v. Miller, Your Honor, the two-step, two-element test of is this directed at insurance and does it affect risk pooling in that it affects the bargain or substantially affects the bargain between the insured and insurer? And the answer to that question, yes, the Ross case deals with the conflict preemption or enforcement. I think that's the area we're more interested in, the conflict. And what it said about that is that – I'm sorry, did I interrupt you? No. Okay. That there's no state law at issue with discretionary clauses. It said there's no state relief requested. It says that it does not create, duplicate, supplant, or supplement ERISA causes of actions. It says that there's no alternative enforcement mechanism outside of ERISA. It says at most what it does is it affects the standard of review. And so if that's where your focus is, Your Honor, that's what the Ross case says very clearly, and I think that's supported by the Rush case. It relies upon the Rush case. It relies upon the Union v. Ward case. It relies upon – it even addresses Glenn in a manner that's – and that's the only thing that I'm interested in.  And the other thing that's important to me is the factual differences between the Michigan experience and Montana. Well, the one – I would say not factual, Your Honor, but I think it was you who asked or made the statement that we're not dealing with a law here. We're dealing with the Commissioner Morrison's statement. We are, in fact, dealing with Montana Code Annotated 33-1-501 and 502, however. And those are – what 502 – Montana Code Annotated 502, not ERISA 502 – states is this, that if an insurance policy is ambiguous or misleading and it deceptively affects the risk purported to be assumed in the contract, then it is illegal. And that is a – Commissioner Morrison looked at that and said that the discretionary clause, in fact, violates that statute. And that was the basis of his decision. That statute is the basis of his decision. So there is a statute out there, his interpretation of the statute, and the district court judge agreed with that interpretation of the statute. And as I said earlier, that hasn't been appealed, so for now that's the law in Montana. Discretionary clauses are illegal under Montana law. The district court didn't have Ross, of course. I don't believe so, Your Honor, no. It did come down after. Yes, it did come down after. It did come down after that. And I think that we got Glenn like two weeks before the oral argument, so we did provide the court with Glenn and the conflict of interest. And I think what the court said in the Montana case, the implication is that if there is a conflict of interest recognized in Glenn, then it's ambiguous and misleading such that it affects the risk purported to be assumed. Okay. So with respect also to the Ross case, I just want to make another comment, unless you have more questions about the enforcement or the remedy part of the test. What Ross recognized, and I think Ross does a good job summarizing in a pretty straightforward manner the U.S. Supreme Court cases. And what it recognized is that if there is no standard of review under an ERISA policy, de novo is the default standard of review. And it also said that it recognized that Rush said that there was no conflict in removing the discretion clause. As I said earlier, it concluded that citing Firestone and Rush that not having a discretion clause does not conflict with the civil enforcement scheme or the policy of uniformity with ERISA policies, as that was left to the states to regulate. What do you say about counsel's argument that there is a congressional policy? I won't reframe it, but you heard what he had to say, that the Ross result creates a conflict with clear congressional policy and the careful balance is struck by ERISA. Well, you won't be surprised to hear I think he's wrong, Your Honor. And the reason I think he's wrong is because if you read the Glenn quote to which they refer, I think it's at pages 2350 to 251, I think you can read that in different ways. But I don't think the court said in there that it was Congress's intent that all these cases be based upon an abuse of discretion standard. They left it to the courts to decide that issue, and they also left regulation of insurance to insurance commissioners. And so I don't think he is correct about that. And in fact, what the Glenn court said was that it's difficult to understand why a State should not be allowed to eliminate a potential conflict under the circumstances. So ---- And what did Rush do with respect to abuse of discretion? Well, I think what Rush ---- Because the cases came out to contrary conclusions. Glenn on one hand and Rush on the other. I don't think they're contrary conclusions, Your Honor. In what respect do you ask that question? They came out to contrary conclusions. Well, I'm trying to get a handle on to what extent, and this is a follow-on question from Judge Fisher, to what extent is the abuse of discretion standard determined by the State of the law at this point? We understand your position with respect to what Congress may or may not have intended. How do you read the cases on that? I think that what the cases say is that ERISA policies can contain an abuse of discretion standard, and then if you apply the insurance commissioner says that they violate the law of the State, that they can regulate them out of the policies. What Rush said, Your Honor, is that you can have a different standard of review than a discretionary clause in ERISA policies, and it did that by having the mandated benefit review where a doctor sits down and goes through the medical records and decides whether or not the procedure is medically necessary. And I think the Glenn case says that they are once again allowed, but that they are a conflict of interest and that the Court ‑‑ I mean, why wouldn't States want to regulate a conflict of interest? All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Fisher